IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ANGEL FELICIANO HERNANDEZ,

     Plaintiff

        v.

MIGUEL PEREIRA CASTILLO, ET AL.,

     Defendants.

CIV. NO. 09-1569 (PG)

**OPINION AND ORDER**

Plaintiff Angel Luis Feliciano Hernandez (hereinafter "Plaintiff" or "Feliciano") brings suit against former Secretaries and Administrators of the Puerto Rico Department of Corrections and Rehabilitation (hereinafter "DOC").[1] Plaintiff's complaint is premised upon violations of the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983 ("Section 1983").  Those violations arise from his allegedly unlawful incarceration by DOC officials who purportedly knew but were deliberately indifferent to the fact that he was serving time beyond his sentence, subjecting Plaintiff to over fifteen years of imprisonment without penological justification.  Only defendant Zoe M. Laboy Alvarado (hereinafter "Defendant" or "Laboy") moved to dismiss (Docket No. 10) the complaint.[2]  Plaintiff timely opposed the motion to dismiss (Docket No. 14).  For the reasons that follow, which apply equally to all of the named defendants in the complaint, the Court **GRANTS** Defendant's motion to dismiss.

---

[1] Five defendants are named in the complaint for their tenures as DOC Secretaries. In reverse chronological order, they are: Miguel A. Pereira Castillo ("Pereira") for events on or before June 24, 2008; Victor M. Rivera Gonzalez ("Rivera") for January 2001 to December 2002; Zoe M. Laboy Alvarado ("Laboy") for September 1998 to December 2000; Nydia M. Cotto Vives ("Cotto") for January 1997 to June 1998; and Joseph Colon Morales ("Colon") for December 1994 to December 1996.

[2] Defendants Pereira, Cotto, Colon, and their respective conjugal partnerships never answered the complaint and were thus held in default. (See Docket Nos. 17 & 29.)

Civ. No. 09-1569(PG)                                             Page 2

## I. Factual Background

The Court draws the following facts from Plaintiff's complaint (Docket No. 1) and takes them as true for purposes of resolving Defendant's motion to dismiss.

### A. Facts Underlying Plaintiff's Incarceration

On April 14, 1981, Plaintiff was sentenced by the Superior Court of Mayaguez for a term of "perpetual imprisonment, for treatment until his social rehabilitation is accomplished" with a minimum of twelve (12) years imprisonment.[3] People v. Feliciano Hernandez, Crim. No. G-80-603-06 (Super. Ct. Mayaguez Apr. 14, 1981). The judgment was affirmed by the Puerto Rico Supreme Court. The People of Puerto Rico v. Angel Feliciano Hernandez, 13 P.R. Offic. Trans. 481 (P.R. 1982). Summarizing the procedural and factual history of the case, the supreme court reiterated that Plaintiff was charged with attempt to commit rape, lewd and indecent acts, aggravated restraint of liberty, and illegal possession of firearms, for events taking place on the

---

[3] The original sentence, in Spanish, reads: "*Reclusión perpetua, para tratamiento hasta que se logre su readaptación social. Se dispone que el mínimo de esta reclusión no será menor de 12 años naturales.*" This archaically-worded sentence appears to be a product of Puerto Rico's Penal Code of 1974, which adopted a model of indeterminate sentencing and contained specific provisions for sentencing habitual offenders like Plaintiff. See P.R. Laws, Act No. 115 of July 22, 1974. Specifically, section 74 provided: "a person convicted of an offense punishable by imprisonment who has been convicted of two or more offenses punishable by that kind of penalty, committed at different times and independent from each other and who shows a persistent tendency to offend, shall be declared by the Court to be a habitual criminal and confined for his treatment *until such time as his social rehabilitation is completed*." 1974 P.R. Laws 439-440 (emphasis added). In 1980, amendments to the Penal Code produced a switch to a determinate sentencing system in which the judge imposed a punishment with a fixed term and the convict "qualified for parole upon serving half of the jail term." See P.R. Laws, Act No. 149 of June 18, 2004; see generally Pueblo v. Reyes Moran, 23 P.R. Offic. Trans. 682 (P.R. 1989) (detailing the history of reforms to the habitual offender sentencing provisions, including the delays to their dates of effectiveness). The Penal Code was extensively reformed by Act No. 149 of June 18, 2004.

night of September 8, 1980.[4]  The court noted, however, the lower court's peremptory acquittal of the charge for attempt to commit rape after hearing the evidence.  The supreme court also mentioned that the superior court, in handing out its sentence, had discussed Feliciano's recidivism based on four (4) previous convictions and sentences for sexual offenses, and took judicial notice of those former convictions.  The supreme court affirmed the lower court's order permanently separating the convict from society, through life imprisonment, to receive treatment until he was rehabilitated, with a minimum term of imprisonment of twelve (12) years.

The DOC determined that based on the sentence affirmed by the Puerto Rico Supreme Court, Plaintiff would complete minimum imprisonment on January 30, 1993.  On that date, Plaintiff alleges that he completed treatment and social rehabilitation.  Plaintiff was not released from prison, however, until June 24, 2008, after successful habeas corpus proceedings.  Thus, Plaintiff states that he was "unlawfully imprisoned and confined in the correctional system of Puerto Rico in excess of fifteen (15) years." (Compl.  ¶ 15.)

The DOC did not provide Plaintiff with any good-time credit and sentence reductions, despite positive evaluations and progress reports with regard to assigned training and tasks.  During his term of imprisonment, Plaintiff received training in several trades and occupations, such as gardening, agriculture, laundry, floor polishing, warehousing, truck and heavy equipment operations, and handicrafts.  The positive evaluations and progress reports reflected a rehabilitation process which Plaintiff claims should have been considered in the reports that the DOC Secretaries had a duty to prepare. Inapposite to applicable regulations, the [DOC], and the defendants, for purposes of sentence reductions did not consider Feliciano Hernandez's

---

[4] More specifically, Plaintiff was charged with one (1) attempt to commit rape; two (2) violations of art. 105 of the Penal Code, P.R. LAWS ANN. tit. 33 § 4067 (lewd and indecent acts); two (2) violations of art. 131, P.R. LAWS ANN. tit. 33 § 4172 (aggravated restraint of liberty); and one (1) violation of art. 4 of the Weapons Law, P.R. LAWS ANN. tit. 25 § 414, *repealed by* Act Sept. 11, 2000, No. 404, §6.13, effective Mar. 1, 2001.

achievements in his assigned training and tasks." (Compl. ¶ 18.)  If they had been considered, Plaintiff submits that even his minimum twelve (12) year sentence would have been significantly reduced.

After completing the minimum imprisonment term in 1993, Plaintiff was evaluated several times by the Parole Board of the Commonwealth of Puerto Rico (the "Parole Board").  After 1993, the Parole Board would review Plaintiff's case on a yearly basis and his request for parole was always denied "through diverse excuses and asserted exigencies which the plaintiff had already met." (Compl. ¶ 20.)  The Parole Board never granted Plaintiff parole nor did it notify DOC administrators of the nature of Plaintiff's sentence and of his right to be released from imprisonment upon rehabilitation.

During his imprisonment, Plaintiff was subjected to drug and alcohol tests, the results of which were negative.  Plaintiff even became an ordained pastor.  Psychological evaluations conducted after having served the twelve (12) year minimum sentence found Plaintiff to be of sound mind, showing that he had rational, logical and coherent thoughts; showed regrets for errors committed; had proper manners; had an interest in dedicating himself to his family and community; and did not show interpersonal problems or problems with authority.  The evaluation recommended that Plaintiff be granted any privilege due.  After serving the minimum twelve (12) year sentence, Plaintiff was never subject to complaint or disciplinary proceeding.  In 1996, he was reclassified to minimal custody status, which he maintained until his release from prison.

In 1998, Plaintiff appeared *pro se* before the Puerto Rico courts claiming his right to be released from prison.  On June 23, 1998, a court order was issued requiring the DOC explain the reason for Plaintiff's incarceration in view of the April 14, 1981 judgment.  The DOC informed the court that Plaintiff's case was before the Parole Board, which denied his request for parole once again on August 16 of the same year without giving notice to the

DOC administrators of the nature of Plaintiff's sentence and of his right to be released upon rehabilitation.   On June 2001, Plaintiff's wife, Carmen Negron Ortiz, certified that she would accept him in her home both for visitation and liberty on parole.  On October 2002, however, Plaintiff's wife died without Plaintiff receiving leave to spend time with her, their daughter, and grandchildren.

In May of 2000, Plaintiff was referred to a psychological program sponsored by the DOC called "Learning to Live Without Violence." The final report of Plaintiff's achievements in this program, dated April 18, 2001, showed, among other things, that: he has borderline intelligence; he does not show indicators of anxiety, fear, or indecision; and his affective area, behavioral problems, and physical reaction to tensions were all within normal limits.

During 2003 and 2004, DOC employees informed their supervisors that Plaintiff had been imprisoned in excess of twenty-two (22) years and had been classified on minimal custody for more than eight (8) years.   They also informed their supervisors that Plaintiff was sixty-one (61) years old at the time, that he did not require further therapy, and that his work was uninterrupted and satisfactory.

The DOC, however, maintained its designation of Plaintiff's sentence as "perpetual imprisonment" and of his conviction for rape or attempted rape, which were not the offenses for which he had been last sentenced.   On September 14, 2005, Plaintiff pursued mandamus proceedings before the Puerto Rico Superior Court, moving for a court order requiring the DOC to rectify its records to properly show the offenses for which he had been sentenced.  The court granted the mandamus petition.  The DOC nevertheless insisted in denying Plaintiff any relief under the reasoning that he had been condemned to "perpetual imprisonment."

On May 29, 2007, Plaintiff, represented by counsel, filed a habeas corpus

petition before the Superior Court of Mayaguez.  On April 25, 2008, that court determined that from the date the minimal sentence requirement was met, the DOC was required to "conduct yearly evaluations of the petitioner to determine when it should cease the security measurement imposed" which the DOC did not do.  Therefore, on June 24, 2008, the superior court granted habeas corpus, holding that Plaintiff's sentence had expired after he had served the twelve (12) years of minimum imprisonment and ordering Plaintiff's immediate release from prison.  On June 23, 2009, Plaintiff filed the complaint in the case at bar.

### B. Plaintiff's Legal Claims

Plaintiff's Section 1983 cause of action against the defendants is premised upon violations of the Eighth Amendment's prohibition of cruel and unusual punishment and of the Fifth and Fourteenth Amendments' Due Process Clauses.  Plaintiff submits that "[e]ach defendant, during the time he/she held supervisory position at the DOC, knew that to subject an inmate to incarceration beyond the expiration of his sentence, was deprivation of the inmate['s] Eighth Amendment rights and due process of law." (Compl. ¶ 38.) Thus, "[i]n keeping the plaintiff confined beyond the term of his sentence, each defendant acted with deliberate indifference and/or reckless disregard of the plaintiff's Eight Amendment rights and due process of law." (Id. ¶ 39.) Each defendant is imputed with unjustifiably depriving Plaintiff of liberty in violation of his Eighth Amendment and due process rights.

Plaintiff also states a cause of action predicated upon the defendants' supervisory liability for their failure to adequately train, monitor, and discipline personnel under their charge, as was their duty.  "Had the defendants complied with their supervisory duties, they would have identified those employees that did not properly register the plaintiff's classification

and inaccurately categorized the crimes for which he had been sentenced." (Id. ¶ 45.)  Finally, Plaintiff pleads supplementary Puerto Rico law claims for the violation of his rights to equal protection under the law, liberty, and due process, under the Puerto Rico Constitution, actionable under Puerto Rico tort law, Article 1802 of the Civil Code, P.R. LAWS ANN. tit. 31, § 5141.  Plaintiff requests relief in the form of joint and several liability against all defendants for $5,000,000.00 in compensatory damages and $2,000,000.00 in punitive damages, as well as attorneys fees and costs.

## II. Rule 12(b)(6) Standard of Review

"The general rules of pleading require a short and plain statement of the claim showing that the pleader is entitled to relief. . . .  This short and plain statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Gargano v. Liberty Intern. Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009) (internal citations and quotation marks omitted).

Motions to dismiss brought under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) are subject to the same standard of review. See Negron-Gaztambide v. Hernandez-Torres, 35 F.3d 25, 27 (1st Cir. 1994).  When ruling on a motion to dismiss for failure to state a claim, a district court "must accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine whether the complaint, so read, limns facts sufficient to justify recovery on any cognizable theory." Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009) (citing LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 508 (1st Cir. 1998)).  Courts "may augment the facts in the complaint by reference to (i) documents annexed to the complaint or fairly incorporated

into it, and (ii) matters susceptible to judicial notice." Gagliardi v. Sullivan, 513 F.3d 301, 306 (1st Cir. 2008) (internal citations and quotation marks omitted).

    "Yet [the Court] need not accept as true legal conclusions from the complaint or naked assertions devoid of further factual enhancement." Maldonado v. Fontanes, 568 F.3d 263, 266 (1st Cir. 2009) (citing Ashcroft v. Iqbal, 129 S. Ct. 1937, 1960 (2009)). Although a complaint attacked by a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted).

    Moreover, "even under the liberal pleading standard of Federal Rule of Civil Procedure 8, the Supreme Court has . . . held that to survive a motion to dismiss, a complaint must allege a plausible entitlement to relief." Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (citing Twombly, 550 U.S. 544 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." Twombly, 550 U.S. at 555 (internal citations and quotation marks omitted). In other words, while the Rule 8 pleading standard does not require detailed factual allegations, it "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Iqbal, 129 S. Ct. at 1949. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing

Civ. No. 09-1569(PG)                                                    Page 9

court to draw on its judicial experience and common sense." <u>Id.</u> at 1950.

## III. Discussion

     Defendant Laboy, the former Secretary and Administrator of the DOC from September 1998 to December 2000, moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), arguing, first, that Plaintiff's claims are time-barred by the one-year statute of limitations for a Section 1983 cause of action.  Second, Defendant raises a sovereign immunity defense under the Eleventh Amendment for claims against her in an official capacity.  Third, Defendant submits that Plaintiff's Fifth Amendment claim applies only to federal actors, not state officials like the DOC officers.  Fourth, Defendant argues abstention based on <u>Colorado River Water Conservation Dist. v. United States</u>, 424 U.S. 800 (1976), due to the presence of a concurrent state proceeding.  Fifth and finally, Defendant states that she is entitled to qualified immunity because she did not violate any clearly established constitutional rights.  Because all federal claims should be dismissed, adds Defendant, Plaintiff's supplementary state law claims should be dismissed as well.

     Plaintiff responds that Defendant failed to address his claims of cruel and unusual punishment under the Eighth Amendment, which he briefly fleshes out in the opposition, and of denial of due process under the Fourteenth Amendment.  Nor does the motion to dismiss make any reference, states Plaintiff, to his theory of supervisory liability for failure to "train, monitor, classify, evaluate and discipline" wrongdoing by subordinate employees.  Finally, Plaintiff rejects Defendant's numerous arguments raised in the motion to dismiss, affirming that his complaint is not time-barred; that the complaint is not an official capacity suit barred by Eleventh Amendment sovereign immunity, but rather a personal capacity suit for monetary

Civ. No. 09-1569(PG)                                                    Page 10

damages; that Defendant's acts violate due process under the Fourteenth Amendment, irrespective of the Fifth Amendment[5]; that <u>Colorado River</u> abstention is inapplicable; and that Defendant is not entitled to qualified immunity because Defendant violated clearly established constitutional rights.

The Court now proceeds to examine the merits of Plaintiff's claims in light of Defendant's challenges.

### A. Viability of Section 1983 Claims: Establishing Personal or Supervisory Liability

"Section 1983 'creates a remedy for violations of federal rights committed by persons acting under color of state law.'" <u>Sanchez v. Pereira-Castillo</u>, 590 F.3d 31, 40-41 (2009)(<u>quoting</u> <u>Haywood v. Drown</u>, 129 S. Ct. 2108 (2009)). While prisoners experience a reduction in many privileges and rights, they retain those constitutional rights that are not inconsistent with their status as a prisoner or with the legitimate penological objectives of the corrections system. <u>Id.</u> In general, to establish liability under Section 1983, plaintiffs must show that (1) the defendant acted under color of state law, and (2) his or her conduct deprived the plaintiff of rights secured by the Constitution or by federal law. <u>See</u> <u>Brenes-Laroche v. Toledo Davila</u>, 682 F. Supp. 2d 179, 185 (D.P.R. 2010) (citation omitted). The second element requires that plaintiffs show the defendant's conduct was the cause-in-fact of the alleged deprivation. <u>Id.</u>

On May 18, 2009, the Supreme Court case <u>Ashcroft v. Iqbal</u> concluded that in the context of <u>Bivens</u> suits "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of

---

[5] The Court interprets Plaintiff's argument as a waiver of his Fifth Amendment due process claim, especially since he does not articulate it with any support of legal authority. Moreover, as Defendant argued correctly, the Fifth Amendment applies to actions of the federal government and not to those of state or local governments. <u>Martinez-Rivera v. Sanchez Ramos</u>, 498 F.3d 3, 8 (1st Cir. 2007). As plaintiffs do not allege that any of the defendants are federal actors, any Fifth Amendment claim must be dismissed with prejudice.

*respondeat superior*." 129 S. Ct. at 1948.  The Court extended this ruling to suits under Section 1983, holding that Section 1983 plaintiffs "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Id. at 1948, 1949 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct").  The First Circuit, in an opinion penned by Chief Judge Lynch, noted that the Supreme Court's language in Iqbal "may call into question our prior circuit law on the standard for holding a public official liable for damages under § 1983 on a theory of supervisory liability." Maldonado v. Fontanes, 568 F.3d 263, 275 n.7 (1st Cir. 2009).  However, the First Circuit did not render a final verdict or furnish any guidance to the district courts on this question because the appellate court found that the plaintiffs had not pled facts sufficient to make out a plausible entitlement to relief under the First Circuit's previous formulation of supervisory liability.

Notwithstanding the Chief Judge's foreboding, the First Circuit has continued to employ and develop its previously articulated standard of supervisory liability under Section 1983.[6]  To this statement of the law, the Court now turns.  Conforming to the Supreme Court's language, the First Circuit has held that "[a]lthough Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior* . . . supervisory officials may be held liable on the basis of their own acts or omissions." Pereira-Castillo, 590 F.3d at 49 (internal citations and quotation marks omitted).  "[O]fficials may be held liable if the plaintiff can establish that her constitutional injury resulted

---

[6] The First Circuit has sided with those circuit courts' supervisory liability standards that, as one noted commentator observed, "only survive Iqbal to the extent they authorize § 1983 liability against a supervisory official on the basis of the supervisor's own unconstitutional conduct or, at least, conduct that sets the unconstitutional wheels in motion." Martin A. Schwartz, Section 1983 Litigation: Claims and Defenses, §7.19[D] (4th ed. 2010). "The issue, then is one of causation, i.e., whether the supervisor's conduct was a proximate cause of the violation of the plaintiff's constitutional rights." Id.; see generally Dodds v. Richardson, No. 09-6157, 2010 WL 3064002  (10th Cir. Aug. 6, 2010) (describing in detail how the circuit courts have tackled supervisory liability post-Iqbal).

from the direct acts or omissions of the official, or from indirect conduct that amounts to condonation or tacit authorization. . . ." Rodriguez-Garcia v. Miranda-Marin, No. 08-2319, 2010 WL 2473321, at *7 (1st Cir. June 21, 2010) (internal quotation marks and citation omitted); see also Pereira-Castillo, 590 F.3d at 49 (noting that supervisory liability typically arises either when the supervisor is the "primary violator or direct participant in the rights-violating incident" or the official responsible for supervising, training, hiring a subordinate "with deliberate indifference toward the possibility that deficient performance of the task eventually may contribute to a civil rights deprivation.") (internal quotation marks and citation omitted).  In indirect conduct cases, the analysis focuses on whether the supervisor's actions displayed deliberate indifference toward the rights of third parties and had some causal connection to the subsequent wrongdoing. See id.; see also Maldonado v. Fontanes, 568 F.3d 263, 275 (1st Cir. 2009) ("[S]upervisory liability under a theory of deliberate indifference will be found only if it would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights.") (internal quotation marks and citation omitted).

     "Under either a direct or indirect theory of liability, the plaintiff must [nevertheless] show that the official had actual or constructive notice of the constitutional violation." Miranda-Marin, 2010 WL 2473321, at *7 (internal quotation marks and citations omitted).  "An important factor in making the determination of liability is whether the official was put on some kind of notice of the alleged violations, for one cannot make a 'deliberate' or 'conscious' choice to act or not to act unless confronted with a problem that requires the taking of affirmative steps." Lipsett v. Univ. of P.R., 864 F.2d 881, 902 (1st Cir. 1988) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986)).  In either case, Section 1983 plaintiffs must always show an "affirmative link," whether through direct participation or through conduct

that amounts to tacit authorization between the actor and the underlying violation. Pereira-Castillo, 590 F.3d at 49.

### B. Why Plaintiff's Claims Fail to Establish Liability

In the case at bar, there is no question that Defendant and the other DOC officer-defendants acted under color of law as officers who possessed power by virtue of state law and whose alleged wrongdoings were made possible only because they were clothed with the authority of state law.  However, Plaintiff's complaint raises serious questions about whether the allegations and pleadings contained therein establish the requisite causation between Laboy's acts or omissions (or those of the other DOC-Secretary defendants for that matter) and Plaintiff's constitutional injury, sufficient to make out a claim of personal or supervisory liability against her.  As the First Circuit did in Sanchez v. Pereira-Castillo, this Court turns to Plaintiff's complaint and finds "that it does little more than assert a legal conclusion about the involvement of the administrative correctional defendants in the underlying constitutional violation." 590 F.3d at 49.  Specifically, Plaintiff states that:

> (1) Each defendant, during his or her supervisory tenure, "knew" that to subject inmates to incarceration beyond the expiration of sentence was a deprivation of their Eighth Amendment and Due Process rights.
> (2) Each defendant "acted with deliberate indifference and/or reckless disregard" of Plaintiff's Eighth Amendment and Due Process rights in keeping Plaintiff confined beyond the term of his sentence.
> (3) Each defendant "unjustifiably deprived" Plaintiff of liberty in violation of his Eighth Amendment and Due Process rights.
> (4) Each defendant "was responsible for the monitoring, disciplining, evaluating, training and supervising" of any and all personnel under their charge.
> (5) The defendants "failed in their duty to assure adequate monitoring, disciplining, evaluating, training and supervising" of any and all personnel under their charge "to assure that all inmates were properly classified and released upon completion of their sentence."
> (6) "Had the defendants complied with their supervisory duties, they would have identified those employees that did not properly register the plaintiff's classification and inaccurately categorized the crimes for which he had been sentenced."
> (7) Each defendant's "failure in monitoring, disciplining, evaluating,

training and supervising" any and all personnel under their charge "caused profound continuous and successive damages" to Plaintiff.

(Compl. ¶¶ 37-46.)  In the factual statement of the parties, Plaintiff also states that defendant Laboy, DOC Secretary from 1998-2000, is being sued "on the basis of his [sic] deliberate indifference" toward Plaintiff's rights, and for:

> her failure to take any action upon being notified of the violations of the plaintiff's rights, denying him due process of law, and for failure to assure adequate training and supervision of personnel under her supervision and failure to implement effectual practice and procedures to protect the interests and constitutional rights of the plaintiff.

(Compl. ¶ 6.)  This same language was used to describe the basis of liability for the four other DOC Secretary-defendants, lending support to the Court's deduction that Plaintiff's complaint consists of cut-and-pasted boilerplate legal conclusions "parroting" the First Circuit's standard for supervisory liability. See Pereira-Castillo, 590 F.3d at 49.

In Pereira-Castillo, the complaint's allegations against some of the defendant DOC officials (including the same DOC Secretary-defendant for which both cases are captioned) stated that they "'were responsible for ensuring that the correctional officers under their command followed practices and procedures [that] would respect the rights" of the plaintiff, and that "'they failed to do [so] with deliberate indifference and/or reckless disregard'" of the plaintiff's rights.  The First Circuit held that these allegations were insufficient to establish those defendants' supervisory liability in order to survive a motion to dismiss.  The court observed that the above-mentioned language consisted of "precisely the type of 'the-defendant-unlawfully-harmed-me' allegation that the Supreme Court has determined should not be given credence when standing alone." Id.  The court added that the only additional reference to those DOC officials' role in the constitutional wrongdoing, beyond "parroting" the Circuit's standard of supervisory liability, was to Secretary

Pereira designing and promulgating the challenged strip search and x-ray policy. *See* *id.* at 49-50.  The court concluded that the "deliberate indifference required to establish a supervisory liability/failure to train claim cannot be plausibly inferred from the mere existence of a poorly-implemented . . . policy and a bald assertion that [the wrongdoing] somehow resulted from those policies."[7] *Id.*; *c.f.* *Maldonado v. Fontanes*, 568 F.2d 263, 275 (1st Cir. 2009) (holding that a mayor's promulgation of a pet policy, coupled with his presence at a challenged pet raid resulting in their mass extermination, was "insufficient to create the affirmative link necessary for a finding of supervisory liability, even under a theory of deliberate indifference.")  On the contrary, *Pereira-Castillo* held that the allegations against two other defendants did satisfy *Iqbal* because the plaintiff successfully pleaded their direct involvement as "primary violators in the rights-violating incident," by, for example, stating that they conducted or ordered the challenged searches at issue. 590 F.3d at 50.

In this case, much like in *Pereira-Castillo*, Plaintiff parroted the circuit's supervisory liability standard without much if any factual enhancement tying defendant Laboy, or any of the other named defendants, to his constitutional injury.  Plaintiff lumps together all five of the DOC Secretaries  who were at the helm of the Department during Plaintiff's fifteen or more years of allegedly excessive incarceration as defendants sharing equal responsibility for broadly-worded and generalized conduct that fails to rise above legal conclusion or, as the Supreme Court has articulated, the "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 ("Where a complaint pleads facts that are merely consistent with a defendant's

---

[7] The court noted, however, that the complaint contained more specific factual allegations averring that Secretary Pereira was responsible for the challenged policies and for failing to adequately train DOC personnel regarding those special types of searches, but that since the court found no underlying constitutional violation arising from those policies, it did not have to decide whether those claims of supervisory liability would pass muster. *See* 590 F.3d at 50 n.9.

liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (internal quotation marks and citation omitted). The language Plaintiff employs that Defendant failed to "implement practices and procedures" or to "assure adequate training and supervision of personnel" and that she "acted with deliberate indifference and/or reckless disregard" is almost identical to that found lacking by Judge Lipez in <u>Pereira-Castillo</u>. If the pleadings in <u>Pereira-Castillo</u> were found infirm under <u>Iqbal</u>, despite containing more specific allegations linking the defendant to the challenged policy at issue, then the more broadly-worded pleadings in this case, which make no effort to supply any particularized facts with respect to any individual defendant, must also fail.

Additional support is found in a factually analogous case predating <u>Iqbal</u> in which this Court dismissed the plaintiff's claims for substantially similar reasons. In <u>Ayuso-Figueroa v. Victor Rivera Gonzalez</u>, the plaintiff sued DOC officials under Section 1983 for failing to grant her time credits and participation in early release programs, alleging that she suffered damages because her imprisonment term was lengthened several years. <u>Ayuso-Figueroa</u>, No. 02-1606 (D.P.R. filed Sept. 30, 2003) (Docket No. 33). The Court found that the complaint contained only "general allegations concerning Co-defendants as playing roles in supervisory positions, which entailed, among others, the enforcing the proper implementation of rules and regulations, and the discipline and training of all personnel working under the [DOC]." <u>Id.</u> at 8. These conclusory statements, added the Court, are:

> precisely the kind of generalized asseverations which have been repeatedly held insufficient to purport a cognizable cause of action against a governmental officer, more so when the concerned officer is a *high ranking Cabinet Member that usually lacks personal involvement* in the taking of decisions at the regional and district level of the Department that he heads.

<u>Id.</u> (emphasis added). Since there were no facts from which it could be inferred that the defendants were "personally involved in the alleged constitutional

deprivation[,]" the Court dismissed the complaint. Id.  In this case, as in Ayuso-Figueroa and Pereira-Castillo, the plaintiff pleads only generalized asseverations concerning high ranking government officials who oversaw Puerto Rico's entire correctional system.

Plaintiff fails to specify how Defendant knew that Plaintiff was wrongfully incarcerated or how she acted with deliberate indifference in keeping Plaintiff confined beyond the term of his sentence, despite the possibility that she may not even have had notice of the alleged wrongdoing as an agency head overseeing a large prison population.  Plaintiff does not, for example, aver that he ever wrote a letter or communicated his plight in any direct way to Defendant, such that she would have been put on notice of the alleged violations, requiring her to confront the problem by taking or failing to take affirmative steps.  At most, Plaintiff makes a general allegation that "[d]uring 2003 and 2004, [DOC] employees informed their supervisors of the plaintiff's unlawful incarceration" detailing how long he had been imprisoned and how he had achieved rehabilitation. (See Compl. ¶ 30.)  Who those supervisors were, whether those supervisors were mid or high-level DOC employees, and whether they communicated any information to the defendants in this case are vital questions left unanswered.

Plaintiff does not allege that Defendant promulgated any policy that led to the bungling of his sentence, nor does he specify which practices and procedures Defendant failed to implement to protect Plaintiff's constitutional rights.  Plaintiff fails to allege any facts specifically linking Defendant's training or supervision of subordinate personnel to the erroneous classification of his sentence, which the Court surmises is normally the responsibility of DOC record-keepers.  Indeed, Plaintiff would have fared better in lodging a complaint against those lower-echelon DOC employees directly handling his case, such as the prison's record-keepers or the Parole Board members who repeatedly denied his requests for release.  Plaintiff shoots

himself in the foot when he states that the Parole Board knew but never gave notice to the DOC Secretaries of the nature of Plaintiff's sentence or of his right to be released upon rehabilitation.  This statement undermines any role that the defendants may have played in acting deliberately indifferent toward Plaintiff's plight.

As previously explained, notice is an important factor in making a determination of liability because one cannot act with deliberate indifference toward a person's constitutional rights if one does not know that his rights are being violated in the first place.  To illustrate this, in the context of an Eighth Amendment claim for incarceration beyond the termination of sentence, Courts of Appeals have required plaintiffs to show that:

> (1) a prison official had knowledge of the prisoner's problem; (2) the official either failed to act or took only ineffectual action under the circumstances, indicating that his response to the problem was a product of deliberate indifference to the prisoner's plight; and (3) a causal connection between the official's response to the problem and the unjustified detention.

Montanez v. Thompson, 603 F.3d 243, 252 (3d Cir. 2010) (citing Sample v. Diecks, 885 F.2d 1099, 1110 (3rd Cir. 1989)).[8]  This three-pronged test highlights the importance of notice in establishing the defendant's deliberate indifference and thus in proving an affirmative link between the prison official's conduct and the prisoner's constitutional harm.  See, e.g., Moore v. Tartler, 986 F.2d 682, 686 (3rd Cir. 1993)(deliberate indifference is more typically shown "in those cases where prison officials were put on notice and then simply refused to investigate a prisoner's claim of sentence miscalculation.")  Indeed, even if Plaintiff were able to show some form of

---

[8] The First Circuit has not had the opportunity to articulate any particular standard for reviewing an Eighth Amendment claim for incarceration beyond the expiration of sentence under Section 1983.  Most Courts of Appeals, however, have enunciated a standard like the one stated above requiring a showing of "deliberate indifference" by the appropriate prison official to establish liability. See, e.g., Campell v. Peters, 256 F.3d 695, 700 (7th Cir. 2001) (citing Moore v. Tartler, 986 F.2d 682, 686 (3rd Cir. 1993); Sample v. Diecks, 885 F.2d 1099, 1108-09 (3rd Cir. 1989); Haywood v. Younger, 769 F.2d 1350, 1354-55 (9th Cir. 1985)).

notice given to Defendant, he would still have to go further, for "not every official who is aware of a problem exhibits deliberate indifference by failing to resolve it." Id. (internal quotation marks and citation omitted).  While Plaintiff's complaint is dismissed on the basis of Iqbal, the Court finds it highly doubtful that Plaintiff would be able to state a plausible Eighth Amendment violation against Defendant under the three-pronged test elaborated above.

Plaintiff's allegations, taken as true, simply do not allow for the inference that Laboy or any of the other named defendants were personally involved in the deprivation of Plaintiff's constitutional rights.  The facts do not link any of the defendants with sufficient specificity to the violation of either Plaintiff's Eighth Amendment right to be free from incarceration without penological justification or his Fourteenth Amendment right to be afforded due process to challenge the length of his sentence in an administrative forum.  The only facts specific to Laboy's personal involvement are set forth in Plaintiff's argument against Defendant's qualified immunity defense. (See Opp. Mot. Dismiss 17.)  There, Plaintiff submits that Laboy violated clearly established law with respect to his incarceration because this Court had so inferred with respect to the prison system as a whole in the undersigned's Opinion and Order Morales-Feliciano v. Rossello Gonzalez, No. 79-4 (D.P.R. filed Jan. 25, 2000) (Docket No. 7478).  In that Opinion, this Court laid out detailed factual findings and conclusions of law dealing with the DOC's widespread and systemic constitutional violations in the administration of its prisons.  While Plaintiff is correct that this Court had previously found that Laboy was aware of the constitutional deficiencies, including those relating to classification of crimes, plaguing the prison system since the beginning of the Morales-Feliciano litigation, these allegations do not establish a causal connection between Laboy's general management of a prison system and Plaintiff's specific harm at his regional prison.  This is

especially true in light of the stark difference in context between a claim for injunctive relief in <u>Morales-Feliciano</u> and a claim for monetary damages under Section 1983 in this case.  Plaintiff is left with no other choice but to rely on the generalized, broadly-worded, and conclusory language that all of the defendants "acted with deliberate indifference."

If the Supreme Court and the First Circuit have ruled that such language is not enough to survive a Rule 12(b)(6) motion to dismiss, then this Court will take no liberty in defying this precedent.  The Court holds that Plaintiff's claims must be dismissed for failure to satisfy the causation requirement of Section 1983 under the rigors of the Supreme Court's <u>Iqbal</u> pleading standards.  This dismissal on this basis obviates any need to tread deeper into the uncharted waters of Plaintiff's Eighth Amendment claim or to expend unnecessary judicial resources to make up for his inadequately-pled and unadorned Fourteenth Amendment due process claim.[9]

### C. Other Defenses and Puerto Rico Law Claims

In the wise administration of judicial resources, the Court refrains from entertaining numerous other arguments relating to qualified immunity, Eleventh Amendment immunity, and <u>Colorado River</u> abstention.  The Court should also decline to exercise supplemental jurisdiction over state law claims when all federal claims are dismissed. <u>See</u> <u>Camelio v. American Federation</u>, 137 F.3d 666, 672 (1st Cir. 1998) ("The balance of factors ordinarily weigh strongly in favor

---

[9] Beyond stating that Defendant violated Plaintiff's rights to due process, Plaintiff never fills in the gaps of that very rough skeletal pleading, be it in his complaint or opposition to Defendant's motion to dismiss. Plaintiff fails to plead, for example, whether Defendant is sued for violating substantive or procedural due process and how Plaintiff would meet the appropriate standards for proving either of those claims.  If procedural due process, a likely candidate in this case, is indeed the constitutional peg for Plaintiff's Fourteenth Amendment claim, Plaintiff fails to point to any DOC regulation or policy establishing a procedure that Defendant failed to follow in order for the Court to be able to determine what process was due under the Supreme Court's familiar <u>Mathews v. Eldridge</u> test. <u>See</u> <u>Mathews v. Eldridge</u>, 424 U.S. 319, 335 (1976); <u>see, e.g.</u>, <u>Watson v. Caton</u>, 984 F.2d 537, 540-41 (1st Cir. 1993) ("The process due depends on the circumstances.")

of declining jurisdiction over state law claims where the foundational federal claims have been dismissed at an early stage in the litigation.")  Since all of Plaintiff' federal claims are dismissed, the Court will not exercise supplemental jurisdiction over Plaintiffs' remaining state law claims, which are dismissed without prejudice.

## IV. Conclusion

Assuming the complaint's facts are true, the Court laments the sad saga that Plaintiff was forced to endure as a prisoner whose Kafkaesque plight appeared to be repeatedly ignored by the DOC.  However, the Court cannot replace its constitutional directive to judge facts indifferently through the eyes of the law with its sympathy for Plaintiff having suffered a terrible injustice.  Plaintiff simply failed to state a plausible claim for relief by painting too broad a brush and not digging deeper beyond the surface of a generalized grievance against the heads of a department.  By not doing the extra legal work required to make those specific causal connections between his alleged harm and those responsible for it, he missed his opportunity to obtain any relief.  As things currently stand, the Court can go no further.  The Court **GRANTS** Defendant's motion to dismiss (Docket No. 10).  Plaintiff's Section 1983 claims against all of the defendants are **DISMISSED WITH PREJUDICE** while supplementary Puerto Rico law claims against all of the defendants are **DISMISSED WITHOUT PREJUDICE.**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, August 24, 2010

Civ. No. 09-1569(PG)                                                    Page 22

                              S/ JUAN M. PÉREZ-GIMÉNEZ
                              JUAN M. PÉREZ-GIMÉNEZ
                              UNITED STATES DISTRICT JUDGE