# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

ANGEL LUIS FELICIANO
HERNANDEZ

Plaintiff

v.

MIGUEL A. PEREIRA CASTILLO,
Former Secretary of the Department of
Corrections and Rehabilitation and
Director of Corrections of  the
Commonwealth of Puerto Rico, and the
conjugal  partnership formed between him
and Jane Doe # 1;  VICTOR M. RIVERA
GONZALEZ,  Former Secretary of the
Department of Corrections and
Rehabilitation and Director of Corrections
of  the Commonwealth of Puerto Rico,
and the conjugal partnership formed
between him and Jane Doe # 2 ; ZOE M.
LABOY ALVARADO, Former Secretary
of the Department of Corrections and
Rehabilitation and Director of Corrections
of  the Commonwealth of Puerto Rico,
and the conjugal partnership formed
between her and John Doe # 1 ; NYDIA
M. COTTO, VIVES Former Director of
Corrections of  the Commonwealth of
Puerto Rico, and the conjugal partnership
formed between her and John Doe # 2 ;
JOSEPH COLON MORALES, Former
Director of Corrections of the
Commonwealth of Puerto Rico, and the
conjugal partnership formed between him
and Jane Doe#3; Department of
Correction and Rehabilitations Facilities

CIVIL NO.: 09-1569 (PG)

PLAINTIFF DEMANDS TRIAL BY
JURY

1

Superintendents John Poe # 1,#2,#3,#4,
and # 5.
Defendants

## FIRST AMENDED COMPLAINT

TO THE HONORABLE COURT:

COMES NOW the Plaintiff through its undersigned attorneys and complaining against

the Defendants, State, Allege and Pray:

## JURISDICTION AND VENUE

1. This action is brought pursuant to 42 USC sec. 1983, and the Eighth and Fourteenth

Amendments to the United States Constitution. Jurisdiction is founded upon 28 USC sec.

1331 and 1343 and the aforementioned statutory provisions. Plaintiff further invokes the

supplementary jurisdiction of the Court to hear and decide claims arising under the laws of

Puerto Rico pursuant to 28 USC sec.1367.

2. This is the proper venue to bring this action, since the cause of action arose in this

district.

## THE PARTIES

### A. Plaintiff

3. Plaintiff **Angel Luis Feliciano Hernández** (hereinafter "Feliciano Hernández") is

of legal age, widower, and resident of Mayaguez, Puerto Rico.

### B. Defendants

2

4. On or before June 24, 2008 Defendant **Miguel A. Pereira Castillo** (hereinafter "Pereira") was the Secretary of the Department of Corrections and Rehabilitation of the Commonwealth of Puerto Rico (hereinafter " Department of Corrections") and Corrections Administrator. On information and belief Pereira held the aforementioned position from December 2002 to December 2008. He is being sued in personal capacity,  on the basis of his deliberate indifference and/or reckless disregard of the rights of the plaintiff who was held incarcerated beyond the term of his sentence. Further, he is sued for his omissions and failure to take any action upon being notified of the violations of the plaintiff's rights, denying him due process of law, and for his omissions and failure to assure adequate training and supervision of personnel under his supervision and omissions and failure to implement practice and procedures to protect the interests and constitutional rights of the plaintiff**.** Jane Doe # 1 and the conjugal partnership are subsidiary liable for the damages caused to plaintiff.

5. **Víctor M. Rivera González,** (hereinafter "Rivera")**,** was the Secretary of the Department of Corrections and Rehabilitation and Director of Corrections of the Commonwealth of Puerto Rico from January 2001 to December, 2002.  He is being sued in his personal capacity,   on the basis of his deliberate indifference and/or reckless disregard of the rights of the plaintiff who was held incarcerated beyond the term of his sentence. He is sued for his omissions and failure to take any action upon being notified of the violations of the plaintiff's rights, denying him due process of law, and for his omissions and failure to assure adequate training and supervision of personnel under his supervision and omissions

3

and failure to implement practice and procedures to protect the interests and constitutional rights of the plaintiff.  Jane Doe # 2 and the conjugal partnership are subsidiary liable for the damages caused to the plaintiff.

6. **Zoé M. Laboy Alvarado**, (hereinafter "Laboy") was Secretary of the Department of Corrections and Rehabilitation and Director of Corrections of the Commonwealth of Puerto Rico from September 1998 to December 2000, having occupied the position of Correction's Administrator from march 11, 1997 to June 30, 1998. She is being sued in personal capacity, on the basis of her deliberate indifference and/or reckless disregard of the rights of the plaintiff, who was held incarcerated beyond the term of his sentence. She is sued for her omissions and failure to take any action upon being notified of the violations of the plaintiff's rights, denying him due process of law, and for omissions and failure to assure adequate training and supervision of personnel under her supervision and omissions and failure to implement practice and procedures to protect the interests and constitutional rights of the plaintiff.  John Doe # 1 and the conjugal partnership are subsidiary liable for the damages caused to plaintiff.

7. **Nydia M. Cotto Vives,** (hereinafter "Cotto") was Director of Corrections of the Commonwealth of Puerto Rico from January 1997 to June 1998. She is being sued in personal capacity, on the basis of her deliberate indifference and/or reckless disregard of the plaintiff who was held incarcerated beyond the term of his sentence. She is sued for her omission and failure to take any action upon being notified of the violations of the plaintiff's

4

rights, denying him due process of law, and for omissions and failure to assure adequate training and supervision of personnel under her supervision and for omissions and failure to implement practice and procedures to protect the interests and constitutional rights of the plaintiff. John Doe # 2 and the conjugal partnership are subsidiary liable for the damages caused to plaintiff.

8. **Joseph Colón Morales,** (hereinafter "Colón') was Director of Corrections Department of the Commonwealth of Puerto Rico from December 1994 to December 1996. He is being sued in personal capacity, on the basis of his deliberate indifference and/or reckless disregard of the rights of the plaintiff who was held incarcerated beyond the term of his sentence. He is sued for his omissions and failure to take any action upon being notified of the violations of the plaintiff's   rights, denying him due process of law, and for his omissions and failure to assure adequate training and supervision of personnel under his supervision and omissions and failure to implement practice and procedures to protect the interests and constitutional rights of the plaintiff.  Jane Doe # 3 and the conjugal partnership are subsidiary liable for the damages caused to plaintiff.

9. The Department of Corrections and Rehabilitations Facilities Superintendents John Poe #1, #2. #3,# 4, and #5, were the persons in charge of the different Department of Corrections facilities  where Feliciano Hernández was  unlawfully confined beyond the term of his sentence. As Superintendents of the correctional facilities, these defendants   were directly responsible for the proper classification and release of the inmates under their

5

custody, particularly they were responsible for the rehabilitations reports of habitual offenders as the plaintiff.

## FACTUAL BACKGOUND

10. Feliciano Hernández was born on January 6, 1942 in Mayaguez. He studied the first two years in elementary school in Puerto Rico's public school system and while imprisoned he obtained a seventh grade  education.

11. He was incarcerated several times and the last sentence against him was issued on April 14, 198, as habitual offender. The judgment provided the following penalty: A Perpetual imprisonment, for treatment until his social rehabilitation is accomplished. It is adjudged that the <u>minimum imprisonment will be 12 years</u>." <u>People v. Feliciano Hernández</u>, Criminal Number G-80-603-06, Superior Court of Mayaguez.

12.  Upon appeal, on October 21, 1981 the Puerto Rico Supreme Court confirmed the judgment through opinion published  in <u>Pueblo v. Angel S. Feliciano Hernández,</u> 113 D.P.R. 371 (1982), Official Translation at Volume 13, Puerto Rico Reports, Vol. I. , p.  483-488.  In its ruling the Supreme Court stated:

"Appellant was charged with attempt to commit rape, two violations of art. 105 of the Penal Code, 3 L.P.R.A.  sec. 4067 (lewd and indecent acts), two violations of art. 131 (33 L.P.R.A sec. 4172) (aggravated  restraint of liberty) and one violation of art. 4 of the Weapon Law, 25 L.P.R.A. sec. 414, for events which took place on the night of September 8, 1980. **After hearing the evidence, the court ordered peremptory acquittal of the defendant in**

6

**the case of attempt to commit rape.** The jury found him guilty of the violations of arts. 105 and 131 of the Penal Code. The judge came to the same conclusion with regard to art. 4 of the Weapon Law." Volume 13, Puerto Rico Reports, Vol. I. , p.  at page 483.

The Supreme Court further stated:

"Later on the court took judicial notice of the alleged convictions, which were certified by the Clerk, and <u>ordered the convict to be permanently separated from society, through life imprisonment, to receive treatment until he was rehabilitated.</u> **The minimum term of said imprisonment was twelve years."** Id at 484, emphasis provided.

13. The Department of Corrections determined that based on the sentence Feliciano Hernández would complete minimal imprisonment (twelve natural years) on **January 30, 1993.** At that date the plaintiff would have also completed treatment and social rehabilitation.

14.  Contrary to the above, it was not until **June 24, 2008,** after Habeas Corpus proceedings, that Feliciano Hernández was released from prison.

15.  Since completing the minimal imprisonment requirement, the plaintiff was unlawfully imprisoned and confined in the correctional system of Puerto Rico in excess of fifteen (15) years.

16. In violation of the law and applicable regulations, all the defendants, with actual or constructive knowledge of the plaintiff's unlawful imprisonment and in reckless disregard of the plaintiff's constitutional rights, did not apply good-time credit and sentence reductions to Feliciano Hernández.

7

17. During the time Feliciano Hernandez was imprisoned, he received training in several trades and occupations, such as gardening, agriculture, laundry, floor polishing, warehousing, truck and heavy equipment operations, and handicrafts. His evaluations and progress reports in the applications of his training were excellent, which evidenced his rehabilitation process which should have been indicated in the report that the superintendent of the correctional institutions had the duty to prepare.

18. Inapposite to applicable regulations, the Department of Corrections, and the defendants, for purposes of sentence reductions did not consider Feliciano Hernández's achievements in his assigned training and tasks. If considered, Feliciano Hernández performance in his assigned training and tasks would have significantly reduced the  twelve natural years to which he had been sentenced. Feliciano had the right to these reductions based on the holding in <u>People v. Pizarro Solís</u>, 129 DPR 911 (1992). If properly applied to the plaintiff he would have received good-time credit and sentence reductions to which he had rights, thus, an earlier release from prison.

19.  Upon completing   the minimum imprisonment requirement of his sentence, during the next fifteen years of incarceration, Feliciano Hernández was evaluated several times by the Corrections' Parole Board, an institution under the Department of Corrections, without obtaining release from imprisonment to which he had a right after rehabilitation. This was not the established proceeding in law as to habitual offenders. See, 33 Laws of  P.R. Ann. Sec. 3391 and 3392, infra.

8

20. After 1993, on a yearly basis the Corrections Parole Board would review the plaintiff's case and his request for parole would be denied through diverse excuses and asserted exigencies which the plaintiff had already met. The Parole Board did not grant parole to the plaintiff nor did it notify the Administration of Correction of the nature of the plaintiff's sentence and of his rights to be released from imprisonment under the proceeding established by law as to habitual offenders. See, 33 Laws of P.R. Ann. Sec. 3391 and 3392, infra.

21. In multiple occasions during his imprisonment Feliciano Hernández was submitted to the correctional system drugs and alcohol tests and the result of these were negative.

22. While in prison, the plaintiff became an ordained pastor.

23. Psychological evaluations of the plaintiff, conducted after having served the twelve years minimal sentence imposed, deemed the following: (a) he is an assertive person, who freely expresses his thoughts, opinions, and wishes; (b) has rational, logical and coherent thoughts; (c) shows regret for errors committed; (d) has proper manners; (e) has interest in dedicating himself to family and to be useful to the community; (f) does not show interpersonal problems nor with authority. It was recommended in the evaluations that he be granted any   privilege due.

24. After having served the imposed twelve years minimal sentence, the plaintiff was not the subject of complaint or disciplinary proceeding, and on the year 1996 he was

reclassified to minimal custody status, condition which he maintained until released from prison.

25. In 1998, in *pro se* appearance before the courts of Puerto Rico the plaintiff claimed his rights to be released from prison. On Jun 23, 1998, the court entered Order requiring the Corrections Department to explain the reason for the plaintiff 's incarceration in view of the April 14, 1981 judgment. The Corrections Department opposed the plaintiff's claim, and informed the court that the plaintiff's case was before the Corrections' Parole Board. Again, this was misrepresentation and it was not the established proceeding in law as to habitual offenders. See, 33 Laws of P.R. Ann. Sec. 3391 and 3392, infra.

26. On August 16,1998,  once again, the Correction's Parole Board denied the plaintiff's request for parole, without giving notice to the Administration of Corrections of the nature of the plaintiff's sentence and of his rights to be released from imprisonment under the proceeding established by law as to habitual offenders. See, 33 Laws of P.R. Ann. Sec. 3391 and 3392, infra. Exemplifying  an administrative process designed to circumvent laws and the rights of the plaintiff.

27. During the month of May, 2000 Feliciano Hernández was referred to a Department of Corrections psychological program entitled "Learning to Live Without Violence." On April 18, 2001 the final report on plaintiff's achievement in this program show that: (a) he approved 125 hours in the program; (b) he has borderline intelligence; (c) did not show indicators of anxiety, fear and indecision; (d) his affective area was found within normal

limits; (e) his behavioral problems were within normal limits; (f) his physical reaction to tensions were within normal limits; and (g) the psychologist recommended community follow-up.

28. Carmen I. Negrón Ortiz, the plaintiff's wife, on June 2001 certified that she would accept him in her home both for temporary passes and liberty on parole.

29. On October 2002 the plaintiff's wife died, without him receiving leave to share time with her, their daughter and grandchildren.

30. During 2003 and 2004, Department of Corrections employees informed their supervisors of the plaintiff's unlawful incarceration, detailing, among others that: (a) he had been imprisoned in excess of 22 years; (b) he had been classified on minimal custody for more than 8 years;( c ) he was 61 years old; (d) he did not required further therapy, and his work was uninterrupted and satisfactory.

31. The Department of Corrections persisted in its arbitrary designation of the plaintiff' conviction for the crime of rape or attempt, which were not the offenses for which he had been sentenced. The classification given by the Department of Correction adversely affected the plaintiff's evaluations, rights and privileges during his unlawful incarceration.

32. On September 14, 2005, the plaintiff filed Mandamus proceedings before the Superior Court of Puerto Rico, moving the court to Order the Department of Corrections and Pereira as the institution Secretary to rectify its records to properly show the offenses for

which he had been sentenced. The court granted the petition and ordered the Department of Corrections to rectify the plaintiff's records.

33. The Superior Court Order notwithstanding, the Department of Corrections and Pereira insisted in denying the plaintiff's rights and privileges under the reasoning that he had been condemned to "perpetual imprisonment."

34.  On May 29, 2007 the plaintiff, represented by counsel, filed Habeas Corpus before the Superior Court of Mayaguez. On April 25, 2008 the court determined that from the date the minimal sentence requirement was met, the Department of Correction was  supposed to "conduct yearly evaluations of the petitioner to determine when it should cease the security measurements imposed, something which it did not do." Pereira's inaction was in violation of Articles 103 and 104 of the of the 2004 Puerto Rico Penal Code, 33 Laws of P.R. Ann.sec. 4731 and 4732,

35. After further proceedings, on June 24, 2008, the Court granted the Habeas Corpus,  holding that the sentence had expired after the plaintiff had served 12 years of imprisonment, and ordered the plaintiff's immediate release from prison.

## GENERAL ALLEGATIONS REGARDING DEFENDANTS' ACTIONS AND DAMAGES CAUSED THEREBY

### 1.  **Defendant Pereira**

36. On September 14, 2005, the Superior Court of San Juan, in the case of **Angel Feliciano Hernández v. Administration of Correction and others**, Civil No. KPE05-1126

12

(Mandamus) entered Judgment ordering the Administration of Correction to correct all official documents which showed that the plaintiff was erroneously convicted of the crimes of sexual violation or tentative of, crimes for which the plaintiff had not been convicted. Among its findings the court stated: "From the petitioner's record, in control of the defendant, it appears that he is only fulfilling judgment for infractions of articles 131 and 105 of the Penal Code of 1974, as well as a lesser aggravated aggression.' (Our translation). (**Exhibit A.**) On examination of the plaintiff's record, Pereira obtained knowledge of, among others:

(1) the fact  that in the year 1998 the plaintiff had filed  *pro se,* before the Superior Court Mayaguez Part, petition of Habeas Corpus  to which was attached  copy of  the judgment showing that he had not been convicted of the crimes detailed in his prison records, and claimed his right to be released from prison;

(2) that the Corrections Department induced the Court to error by informing that the matter had been referred to the Parole Board who in turn informed the Court that the "privilege" of the plaintiff release had been denied, and that the plaintiff would be evaluated the next year. The Court, misled by the Corrections Department, concluded that the plaintiff should exhaust "administrative remedies", while expressing:"We trust the Corrections Administration and the Board guarantee a just process to the petitioner."; **Exhibits B, C, and D.**

37.  During the course of the Mandamus proceeding, on August 29, 2005, Ana Teresa López  submitted into the record  document addressed "TO WHOM IT MAY CONCERN"in

13

which she states, among others, that the plaintiff was rehabilitated and proceeded to describe his achievements, while urging the Court to grant his release. Other Department of Corrections' officials and employees, including a security supervisor (Col. Héctor Fontanez Rivera) and the security director (Captain Gilberto Negrón Falcón) subscribed the petition. **Exhibits E, F & G.** Pereira disregarded Ana Teresa López's, and other Corrections Department officers and employees opinion about the plaintiff's rehabilitation, release from prison. Ana Teresa López was the **superintendent of the State Penintentiary.**

38. On March 18, 2004, Carmen D. Marín Rivera Rivera, Unit Supervisor, approved a letter prepared by Andrés Martinez Colón, Social Penal Technician, addressed to attorney Waleska Casiano, Director of the Department of Corrections Legal Division. The report concludes that the plaintiff has been rehabilitated and could be integrated in a program that would allow his reintegration and social adaptation. In his Record of Interviews and Daily Incidents, Andrés Martínez stated that the purpose of the letter was an Informative Motion that should be filed by the attorneys of the Department of Corrections before the Superior Court of San Juan in order for the Court to consider integrating the plaintiff in the free community ("libre comunidad"). The letter, among others, establish: (1) That Feliciano has been in minimun custody since 1996; there are no acts of indiscipline ; has completed several programs, among these "Living Without Violence"; on May 16, 2001, institution's psychologist Juan C. Colón recommended that Feliciano receive the benefit of follow up program in the community; had been sentenced under the system of indefinite sentence, yet

14

the sentencing judge recommended perpetual sentence with a 12 years minimum; he had been imprisoned for 22 years, 11 months and 3 days; on September 23 1996 the Treatment and Classification Committee had established that Feliciano did require further evaluations since he had completed his therapies. **Exhibit H.** Pereira disregarded these recommendations from supervisors and penal technicians of the Department of Corrections, and the Informative Motion before the Superior Court was never filed.

39. Moreover, during his incumbency Pereira had knowledge of the following:

(1)  the fact that the plaintiff's sentence  was issued on April 14, 1981. The judgment provided the following penalty: "Perpetual imprisonment, for treatment until his social rehabilitation is accomplished. It is adjudged that the minimum imprisonment will be 12 years." People v. Feliciano Hernández, Criminal Number G-80-603-06, Superior Court of Mayaguez.  By virtue of that sentence, articles 75 and 76 of the 1974 Penal Code, 33 Laws of PR Ann. Sections 3391 and 3392 were applicable to his imprisonment. In reference to the "habitual offenders", such as the plaintiff, section 3391 in its pertinent part provides that once the habitual offender has served the minimum term imposed the court will yearly express itself about " *maintaining, modifying or ending the security measure imposed.*." (Our translation). As to section 3392, it provides that in  reference to the provision of section 3391, in cases  of security measures imposed on the habitual offenders it will be necessary *"a report from the director of the institution where the convict fulfills the security measure."* 3392 (a). Among codefendants John Poe # 1,#2,#3,#4, and # 5, none provided the report mandated by law, nor

did Pereira required its production.

40. During Pereira's incumbency John Poe # 1 and John Pore # 2 were the Superintendents of the prison facility where the plaintiff was confined and under his care were the plaintiff's individualized record, the content of which related to his sentence and level of rehabilitation, information which through information and belief were communicated to Pereira, if the Superintendents were properly trained and supervised.

41. In the year 2007, represented by counsel, the plaintiff filed motion before the Superior Court requesting among, others that he be released from prison through judgment and Habeas Corpus. The Department of Corrections, under Pereira's instructions, opposed the motion and on March 27, 2008 the Court held evidentiary hearing. Among the witnesses presented by the plaintiff was Ana Teresa López who was the Superintendent (Comandante) of the State Penitentiary in 2005 where the plaintiff was incarcerated. On June 24, 2008 the Court issued Resolution and Order based on determinations of facts and conclusions of law, granting the Habeas Corpus, and ordering the plaintiff's release from prison to a Social Adaptation Home for six months to a year period. **Exhibit I.**

42. Upon the plaintiff's **motion for contempt** and Habeas Corpus, the Court ordered his immediate release. **Exhibit J.**

43. Articles 103 of the of the 2004 Puerto Rico Penal Code, 33 Laws of P.R. Ann.sec. 4731 expressly provides that punishment is extinguished upon completion of the sentence or rehabilitation, and article 104, 33 Laws of P.R. Ann.sec. 4732, requires the Secretary of the

16

Department of Corrections that in case an inmate has been rehabilitated and imprisoned at least 12 years in cases of serious offenses, it is his obligation in conjunction with the Secretary of Justice, to develop the regulations and procedures to evaluate the rehabilitation process, and to inform the Court who would hold hearing to determine the rehabilitation.

44. Law 115 of 2004 which  establish the functions and powers of the Secretary of Corrections provide that it is his **duty**, among others, to "establish and keep individualized records of the background evaluations, general conduct and progress of the correctional population of the system…." 4 Laws of Puerto Rico Ann. Sec 1112 (d). Further, the Secretary must establish "a center of statistics that shall compile and keep information and data on: criminal incidents, in its diverse modes, by groups and ages; **terms of sentence imposed and periods served….**" 4 Laws of Puerto Rico Ann. Sec 1112 (5) (d) (emphasis provided). In the case of the plaintiff, Pereira actions and inactions were in violation of law and his duties as Secretary.

45. During incumbency as Secretary of Corrections, Pereira   ignored the inmates classifications ordered and stipulated in **Morales Feliciano v. Rosselló González** 13 F. Supp. 2d (D.P.R. 1986), and its progenies.  Pereira did not develop the regulations and procedures to evaluate the rehabilitation process of the plaintiff, as habitual offender.  If properly applied to the plaintiff he would have received good-time credit and sentence reductions to which he had rights, thus, an earlier release from prison.

## 2. **Defendant Rivera**

17

46. During his incumbency, Rivera had knowledge of the following:

(1) that codefendants John Poe #2, had not provided the report mandated by articles 75 and 76 of the 1974 Penal Code, 33 Laws of PR Ann. Sections 3391 and 3392, nor did Rivera required it production.

(2) the fact that in the year 1998 the plaintiff had filed *pro se,* before the Superior Court Mayaguez Part, Habeas Corpus motion to which was attached copy of the judgment showing that he had not been convicted of the crimes detailed in his prison records, and claimed his right to be released from prison; **Exhibit A.**

(3) that the Corrections Department induced the Court to error by informing that the matter had been referred to the Parole Board who in turn informed the Court that the "privilege" of the plaintiff release had been denied, and that the plaintiff would be evaluated the next year. The Court, misled by the Corrections Department concluded that the plaintiff should exhaust "administrative remedies"; **Exhibits B, C, and D.**

47. John Poe #2 was the Superintendent of the prison facility where the plaintiff was confined and under his care were the plaintiff's individualized record, the content of which related to his sentence and level of rehabilitation, information which through information and belief were communicated to Rivera, if the Superintendent was properly trained and supervised.

48. During incumbency as Secretary of Corrections, Rivera ignored the inmates classifications ordered and stipulated in **Morales Feliciano v. Rosselló González** 13 F. Supp.

2d (D.P.R. 1986), and its progenies.  Pereira did not develop the regulations and procedures to evaluate the rehabilitation process of the plaintiff, as habitual offender.  If properly applied to the plaintiff he would have received good-time credit and sentence reductions to which he had rights, thus, an earlier release from prison.

### 3. Defendant Laboy

49. During his incumbency, Laboy had knowledge of the following:

(1)  John Poe#3, had not provided the report mandated by articles 75 and 76 of the 1974 Penal Code, 33 Laws of PR Ann. Sections 3391 and 3392, nor did Laboy required its production.

(2) the fact  that in the year 1998 the plaintiff had filed  *pro se,* before the Superior Court Mayaguez Part, Habeas Corpus motion to which was attached  copy of  the judgment showing that he had not been convicted of the crimes detailed in his prison records, and claimed his right to be released from prison. Copy of this motion was served on the Secretary of the Department of Corrections. **Exhibit A.**

50. Laboy had direct knowledge that prior to the end of her term as Secretary of the Department of Corrections, under her direction the Corrections Department Legal Division induced the Court to error by informing that the matter of plaintiff release had been referred to the Parole Board who in turn informed the Court that the "privilege" of the plaintiff release had been denied, and that the plaintiff would be evaluated the next year. The Court, misled by the Corrections Department concluded that the plaintiff should exhaust "administrative

19

remedies" while expressing: "We trust the Corrections Administration and the Board guarantee a just process to the petitioner." **Exhibits B, C, and D.**

51. John Poe #3 was the Superintendent of the prison facility where the plaintiff was confined and under his care were the plaintiff's individualized record, the content of which related to his sentence and level of rehabilitation, information which through information and belief were communicated to Laboy, if the Superintendent was properly trained and supervised

52. During  her incumbency as Secretary of Corrections, Laboy  ignored the inmates classifications ordered and stipulated in **Morales Feliciano v. Rosselló González** 13 F. Supp. 2d (D.P.R. 1986), and its progenies. Laboy did not develop the regulations and procedures to evaluate the rehabilitation process of the plaintiff, as habitual offender.  If properly applied to the plaintiff he would have received good-time credit and sentence reductions to which he had rights, thus, an earlier release from prison.

**4. Defendant Cotto**

53. Cotto was the Secretary of the Department of Corrections when the plaintiff filed the 1998 Habeas Corpus petition and had direct knowledge of the following:

(1) the fact  that the plaintiff had filed *pro se,* before the Superior Court Mayaguez Part, the Habeas Corpus petition  to which was attached  copy of  the judgment showing that he had not been convicted of the crimes detailed in his prison records, and claimed his right to be released from prison. Copy of this motion was served on Cotto, **Exhibit A.**

20

(2) Under her directive the Corrections Department Legal Division induced the Court to error by informing that the matter had been referred to the Parole Board who in turn informed the Court that the "privilege" of the plaintiff release had been denied, and that the plaintiff would be evaluated the next year. The Court, misled by the Corrections Department concluded that the plaintiff should exhaust "administrative remedies", while expressing:' We trust the Corrections Administration and the Board guarantee a just process to the petitioner."

**Exhibits B, C, and D.**

54. Cotto knew that codefendants John Poe #4, had not  provided the report mandated by articles 75 and 76 of the 1974 Penal Code, 33 Laws of PR Ann. Sections 3391 and 3392, and she did not  required its production.

55. John Poe #4 was the Superintendent of the prison facility where the plaintiff was confined and under his care were the plaintiff's individualized record, the content of which related to his sentence and level of rehabilitation, information which through information and belief were communicated to Cotto, if the Superintendent was properly trained and supervised

56. During her  incumbency as Secretary of Corrections, Cotto  ignored the inmates classifications ordered and stipulated in **Morales Feliciano v. Rosselló González** 13 F. Supp. 2d (D.P.R. 1986), and its progenies. Cotto  did not develop the regulations and procedures to evaluate the rehabilitation process of the plaintiff, as habitual offender.  If properly applied to the plaintiff he would have received good-time credit and sentence reductions to which he had rights, thus, an earlier release from prison.

21

### 5. **Defendant Colón**

57. During his incumbency, Colón knew that codefendants John Poe # 5 had not provided the report mandated by articles 75 and 76 of the 1974 Penal Code, 33 Laws of PR Ann. Sections 3391 and 3392, and he did not required its production.

58. John Poe #5 was the Superintendent of the prison facility where the plaintiff was confined and under his care were the plaintiff's individualized record, the content of which related to his sentence and level of rehabilitation, information which through information and belief were communicated to Colón, if the Superintendent was properly trained and supervised

59. During incumbency as Secretary of Corrections, Colón ignored the inmates classifications ordered and stipulated in **Morales Feliciano v. Rosselló González** 13 F. Supp. 2d (D.P.R. 1986), and its progenies. Colón did not develop the regulations and procedures to evaluate the rehabilitation process of the plaintiff, as habitual offender. If properly applied to the plaintiff he would have received good-time credit and sentence reductions to which he had rights, thus, an earlier release from prison.

### 6. **Defendants John Poe #1,#2,#3, # 4. and #5.**

60. John Poe #1,#2,#3, # 4. and #5, were the persons in charge of the different Department of Corrections' facilities where Feliciano Hernández was unlawfully confined beyond the term of his sentence. As Superintendents of the correctional facilities, these defendants were directly responsible for the proper classification and release of the inmates under their custody upon completion of their sentence. While the plaintiff was under their

22

custody, and after he served the minimum sentence they did not provide the reports mandated by articles 75 and 76 of the 1974 Penal Code, 33 Laws of PR Ann. Sections 3391 and 3392. If provided to the Court, the plaintiff would have been released upon completion of 12 years minimum sentence imposed.

## CAUSES OF ACTION

**A. Cruel and unusual punishment, unlawful imprisonment, and denial of due process.**

61. Plaintiff incorporate by reference each and every allegation contained in paragraph 1 through 53, as if fully set forth herein.

62. Each defendant, during the time he/she held supervisory position at the Corrections Department, was acting under color of the laws of the Commonwealth of Puerto Rico.

63. Each defendant, during the time he/she held supervisory position at the Corrections Department, knew that to subject an inmate to incarceration beyond the expiration of his sentence, was a deprivation of the inmate Eighth Amendment rights and due process of law.

64. In keeping the plaintiff confined beyond the term of his sentence, each defendant acted with deliberate indifference and/or reckless disregard of the plaintiff's Eighth Amendment rights and due process of law.

65. Each defendant, unjustifiable deprived the plaintiff of liberty in violation of his Eighth Amendment rights and due process of law.

23

66. Each defendant, acting under color of the laws of the Commonwealth of Puerto Rico, without due process, unjustifiable deprived the plaintiff of liberty causing him profound continuous and successive damages.

**B. Failure to Train, Monitor, Classify, Evaluate and Discipline**

67. Plaintiff incorporate by reference each and every allegation contained in paragraph 1 through 35, as if fully set forth herein.

68. Each defendant was responsible for the monitoring, disciplining, evaluating, training and supervising any and all personnel under their charge.

69. On information and belief, these defendants failed in their duty to assure adequate monitoring, disciplining, evaluating, training and supervising any and all personnel under their charge, to assure that all inmates were properly classified and released upon completion of their sentence.

70. Had the defendants complied with their supervisory duties, they would have identified those employees that did not properly register the plaintiff's classification and inaccurately categorized   the crimes for which he had been sentenced.

71. Each defendant failure in monitoring,    disciplining, evaluating, training and supervising any and all personnel under their charge, caused profound continuous and successive damages to the plaintiff.

**C. Puerto Rico laws  claims.**

24

72. Plaintiff incorporate by reference each and every allegation contained in paragraph 1 through 46, as if fully set forth herein.

73. The acts and omissions of each defendant described herein constitute a violation of the right to equal protection of the law, the right to liberty, and due process of law under the Constitution of the Commonwealth of Puerto Rico.

74. The acts and omissions of each defendant described herein are actionable under the tort law of Puerto Rico, Article 1802 of the Civil Code, 31 Laws of PR Ann. Sec. 5141.

**PRAYER FOR RELIEF**

**WHEREFORE,** the plaintiff requests that the court issue the following relief, jointly and severally, against all defendants:

1. Award reasonable and appropriate compensatory damages to the plaintiff, which damages are estimated at this time to be in excess of Five million dollars ($5,000,000.00);

2. Award exemplary and punitive damages in excess of Two million dollars ($2,000,000.00), in order to deter similar unlawful acts in the future;

3. Award reasonable attorneys fees and costs, as well as applicable interests;

4. Grant such other and further relief as may appear just and reasonable.

A jury trial is hereby demanded.

Respectfully submitted, in San Juan, Puerto Rico, this 6th day of September, 2010.

s/Federico Lora López, Esq.                    s/José Juan Nazario de la Rosa
USDC-PR 201202                                        USDC-PR214401

P.O. Box 194266                        Edificio Alma Mater
San Juan, PR 00919-4266                867 Calle Domingo Cabrera
                                       Santa Rita,SJ, PR 00925-2412
Tel. (787) 758-4995                    Tel. (787) 758-0315
Fax (787) 751-1578                     Fax (787) 758-0315
E-mail: rosslora@prtc.net              E-mail: nazysant@caribe.net

26